Jane Casserly MYERS and Michael R. Myers, Plaintiffs

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

Civil Action No. 9:96–994–8.

United States District Court, D. South Carolina, Beaufort Division.

Jan. 6, 1997.

Colden R. Battey, Jr., Beaufort, SC, for plaintiff.

Samuel R. Clawson, Charleston, SC, for defendant.

## ORDER

BLATT, Senior District Judge.

This matter is before this court on the defendant's motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court held a hearing on this motion on August 23, 1996, and preliminarily denied it, pending submission by the parties of additional briefs to the Court. Having reviewed the motion, briefs, the supplemental authorities submitted by the parties, and the relevant case law, this Court generally denies the defendant's motion to dismiss, except to the limited extent hereinafter set forth.

## FACTS

The complaint in this action alleges that Jane Casserly Myers, an insured of the defendant, was involved in two automobile collisions and suffered personal injuries in each. In the first collision, the alleged tortfeasor, Gene Flowers, was insured by an insurance carrier other than the defendant. That carrier tendered the $25,000.00 policy liability limits of Flowers' policy to plaintiffs, which they accepted. In the second collision, the plaintiff was allegedly struck from behind by an automobile driven by Orville Brock, who was also insured by the defendant. The complaint alleges that the defendant has neither paid, or tendered, to the plaintiffs any portion of Brock's $100,000.00 liability policy, nor has it paid, or tendered, any portion of plaintiffs' policy of $200,000.00 underinsured coverage per accident.

The plaintiffs allege four causes of action: bad faith failure to settle, outrage, breach of contract accompanied by a fraudulent act, and breach of contract. Three of the causes of action have now been settled, leaving only the claim for bad faith in refusing to settle and/or delaying such settlement arising under plaintiffs' underinsured policy and Brock's liability policy. The defendant's motion to dismiss is premised on the underlying tort actions against Flowers and Brock. It argues that the plaintiffs cannot file this action until after they obtain judgments against Flowers and Brock in the underlying wreck cases. It is not disputed that, at the time this complaint was served on the defendant, the plaintiffs had brought tort actions against Flowers and Brock, and served the defendant with process in both of those actions.

## ANALYSIS

I. State Farm's duty to act in good faith regarding the Myers' claim for underinsured benefits available under their policy.

■ The defendant argues that, based on S.C.Code Ann. § 38–77–160 (Supp.1995), and *Williams v. Selective Ins. Co.,* 315 S.C. 532, 446 S.E.2d 402 (S.C.1994), this action must be dismissed because it was brought prematurely. In *Williams,* the plaintiff there brought an action for breach of contract and bad faith refusal to pay underinsured motorist benefits against her insurance company after she had settled with the at-fault driver's liability insurance carrier. She did not bring a tort action against the at-fault driver, but she filed a claim for underinsured benefits with her insurance carrier. The South Carolina Supreme Court upheld summary judgment for the carrier based on the plaintiff's failure to follow S.C.Code Ann. § 38–77–160, which the Court held requires an insured to bring an action against the at-fault driver, and serve copies of the pleadings upon the underinsured carrier, before the insured can bring a suit based on entitlement to underinsured benefits. *Williams,* 446 S.E.2d at 404. The Court explained that the insured must

maintain the right of action against the at-fault driver so long as the insured's carrier has not agreed to the amount and payment of underinsured benefits. *Id.* The *Williams* Court, however, did not hold that an insured can only bring a claim against his insurance carrier for bad faith refusal to pay underinsured benefits until a judgment is obtained against the at-fault driver in the underlying tort action. *Williams* merely requires that the insured bring suit against the at-fault driver and serve the suit papers on the insured's underinsured carrier before any suit can be brought by the insured against this carrier; *Williams* does not address the issue of *when* the insured may bring a suit against his own carrier for bad faith after bringing suit against the tortfeasor as aforesaid.

In *Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 306 S.E.2d 616 (S.C.1983), the South Carolina Supreme Court held that "if an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." In a recent case, the South Carolina Supreme Court explained that an insured may bring an action against his carrier based on the breach of the carrier's duty to act in good faith, even if the carrier has not breached some express provision of the insurance contract. *Tadlock Painting Co. v. Maryland Casualty Co.*, —— S.C. ——, 473 S.E.2d 52, 55 (S.C.1996). In *Tadlock,* the court reasoned that benefits due to an insured are not limited solely to those expressly set forth in the contract. *Id.* 473 S.E.2d at 54.

▐ This Court feels that the South Carolina Supreme Court will hold, when faced with this issue, that an insured is not required to obtain a judgment against an at-fault driver before the insured's carrier's duty arises to exercise good faith and deal fairly with the insured regarding underinsured benefits. At most, *Williams,* and § 38–77–160, only establish that the carrier's duty to act in good faith regarding underinsured benefits arises after the insured brings suit against the at-fault driver and serves the carrier with process.[1] *A fortiori,* at the moment the duty arises, which is at least by that time, it can be breached by the carrier, which breach could very well occur prior to any judgment being rendered in the underlying tort action.

The defendant's reliance on *Lawson v. Porter,* 256 S.C. 65, 180 S.E.2d 643 (S.C. 1971), is misplaced, this Court believes, because there the South Carolina Supreme Court only held that before an insured can bring an action *ex contractu* against his carrier for uninsured benefits, a judgment must first be obtained against the uninsured driver. *Id.* 180 S.E.2d at 644. Here, in the plaintiffs' bad faith action, they are not suing on the contract; instead, they have brought a tort action claiming that the defendant acted in bad faith by refusing to make a settlement offer for underinsured benefits where both accidents were clear cases of liability on Flowers' and Brock's part, and where very serious injuries were suffered by the insured.

Several other state courts have considered similar "prematurity" arguments raised by insurance carriers as a defense. *See Handley v. Farm Bureau Mut. Ins. Co.,* 467 N.W.2d 247 (Iowa 1991); *Ramirez v. USAA Casualty Ins. Co.,* 234 Cal.App.3d 391, 285 Cal.Rptr. 757 (1991); and *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105 (Okla.1991).[2] Those state courts have rejected the prematurity argument because, prior to an insured obtaining a judgment against the at-fault

---

1. It could well be argued that the carrier's duty to act in good faith and deal fairly with the insured arises at the moment the underinsured policy is purchased, and *Williams* establishes that the insured's right to enforce that duty by bringing suit against the carrier can be waived by the insured if § 38–77–160 is not followed. Because of the facts in this case, this Court does not need to, and does not, decide whether the insurer's duty to act in good faith arises at the moment the underinsured policy is written. For purposes of this motion, the duty to act in good faith at least arose after the insured brought suit against the at-fault drivers and served the carrier with process.

2. Although these state court decisions involve different factual circumstances, with regard to statutory and policy language, the courts' reasoning is applicable here. This Court notes that the underinsured policy language is not at issue here because neither party has raised it as an issue or attached a copy of the policy to the pleadings.

driver, the insured's carrier has the duty to act in good faith toward, and deal fairly with, its insured by investigating and processing the underinsurance claim, and, in cases of liability where it is clear that damages have been suffered by the insured that are greatly in excess of the tortfeasors' policy limits, the underinsured carrier may have a duty to make a settlement offer prior to its insured obtaining a judgment against, or exhausting the policy limits of, the tortfeasor. *Handley,* 467 N.W.2d at 249; *Ramirez* 285 Cal.Rptr. at 759; and *Buzzard,* 824 P.2d at 1112. For the aforementioned reasons, the defendant's motion to dismiss any bad faith claim based on its conduct relating to its underinsured coverage is denied.

II. State Farm's duty to act in good faith regarding the Myers' claim for benefits under Brock's liability policy.

This court is of the opinion that the plaintiffs' bad faith claim based on the defendant's failure to attempt to settle their claim against Brock, who was also insured by the defendant, should be dismissed, not on the ground that the claim was brought prematurely, but because the defendant owed no duty to the plaintiffs to attempt to settle that claim. As to Brock's policy, the plaintiffs stand in the shoes of a third-party in relation to the defendant, State Farm. Although State Farm owed a duty to Brock to act in good faith to settle the plaintiffs' liability claim against him, State Farm did not owe the plaintiffs any duty under that policy. The defendant's duty to the plaintiffs under Brock's policy is the same as if the plaintiffs were insured by another carrier. Several other state courts have been asked by plaintiffs to find a special duty extending from the carrier to the plaintiffs in this "double-insured" situation. *See, Galusha v. Farmers Ins. Exch.,* 844 F.Supp. 1401 (D.Colo.1994); *Herrig v. Herrig,* 844 P.2d 487 (Wyo.1992); and *Caserotti v. State Farm Ins. Co.,* 791 S.W.2d 561 (Tex.Ct.App.1990). Those courts rejected imposing such a duty on similarly situated carriers. The *Herrig* court explained that "courts almost universally hold that the insurer does not owe a duty of good faith and fair dealing to the injured party [an insured] when he asserts a third-party claim against another of the insurer's insureds." *Herrig,* 844 P.2d at 491.

This Court believes that the South Carolina Supreme Court, when faced with that issue, will follow the general rule and hold that an insurer does not owe a duty to deal in good faith with an insured when that plaintiff brings a suit against a tortfeasor who is insured by the same insurer because, in that situation, the plaintiff and his insurer occupy adversarial positions. Accordingly, this Court holds that the defendant did not owe the plaintiffs a duty to act in good faith to settle Brock's policy, and the plaintiffs' claim against the defendant based on bad faith and failure to deal fairly, to the extent it is based on any conduct involving Brock's liability coverage, is dismissed.

IT IS SO ORDERED.