**McCray HALMON, Plaintiff,**

v.

**AMERICAN INTERNATIONAL GROUP, INC. INSURANCE COMPANY, Defendant.**

**C.A. No. 2:07–1215–PMD.**

United States District Court,
D. South Carolina,
Charleston Division.

Dec. 5, 2007.

---

Laree Anne Hensley, Laree A. Henlsey Law Office, Charleston, SC, for Plaintiff.

Russell Grainger Hines, Stephen L. Brown, Young Clement Rivers and Tisdale, Charleston, SC, for Defendant.

## ORDER

PATRICK MICHEAL DUFFY, District Judge.

This matter is before the court on Defendant American International Group, Inc. Insurance Company's ("AIG") Motion to Dismiss all of Plaintiff McCray Halmon's ("Halmon") claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, Defendant's Motion to Dismiss is granted.

## *BACKGROUND*

On October 24, 2006, Plaintiff was involved in an automobile collision while driving on Dorchester Road. The driver of the other automobile was one Juteara T. Washington ("Washington"). Plaintiff suffered extensive damage to his automobile, and also suffered personal injuries which required substantial medical care.

Plaintiff retained an automobile insurance policy through the Defendant, which included a provision for underinsured motorist ("UIM") coverage. Washington was insured through GEICO, and her policy had a $15,000 maximum payment.

Plaintiff entered into a Covenant Not to Execute with GEICO, in which Plaintiff agreed not bring legal action against GEICO and GEICO agreed to tender the policy limit of $15,000 to Plaintiff. However, this amount was not sufficient to cover Plaintiff's losses from the collision. Plaintiff alleges that he has suffered $40,000 in damages, in excess of the $15,000 paid by GEICO, as a result of automobile damage, medical bills, and lost wages.

Plaintiff then filed a claim with Defendant in order to get the UIM benefits he believed he was owed. Defendant, citing Plaintiff's alleged failure to follow proper procedures for claiming UIM benefits, re-fused to pay Plaintiff the benefits sought. On August 7, 2007, Plaintiff filed a Complaint in state court against Defendant, alleging bad faith, outrage, breach of contract accompanied by a fraudulent act, breach of contract, and improper claims practices. Defendant removed this case to federal court on diversity grounds on September 6.

Separately, Plaintiff filed an action against Washington in state court on August 7, the same day he filed his action against Defendant. On August 27, copies of the pleadings of that case were served upon the Defendant through the South Carolina Department of Insurance.

Defendant filed the present Motion to Dismiss on September 11. Plaintiff filed a Return on October 12, to which Defendant filed a Reply on October 22.

## *STANDARD OF REVIEW*

A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that Plaintiff cannot prove any set of facts in support of its claims that entitles it to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir.1972). If, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be

treated as one for summary judgment and disposed of as provided in Rule 56. Fed. R.Civ.P. 12(b).

### ANALYSIS

Plaintiff alleges that Defendant wrongfully denied payment of UIM benefits, to which he claims he was entitled under his insurance policy. (Return at 5.) Plaintiff claims that this gives rise to both contract and tort causes of action. Defendant claims that it was well within its rights under state law to deny Plaintiff's claim, and did not act in bad faith. (Mot. to Dismiss at 2.)

The statutory provision in question is S.C.Code Ann. § 38–77–160, which makes it mandatory for South Carolina insurers to offer UIM coverage, and also establishes guidelines for the payment of UIM benefits. The paragraph relevant to this action reads:

> No action may be brought under the underinsured motorist provision unless copies of the pleadings in the action establishing liability are served in the manner provided by law upon the insurer writing the underinsured motorist provision. The insurer has the right to appear and defend in the name of the underinsured motorist in any action which may affect its liability and has thirty days after service of process on it in which to appear. The evidence of service upon the insurer may not be made a part of the record. In the event the automobile insurance insurer for the putative at-fault insured chooses to settle in part the claims against its insured by payment of its applicable liability limits on behalf of its insured, the underinsured motorist insurer may assume control of the defense of action for its own benefit. No underinsured motorist policy may contain a clause requiring the insurer's consent to settlement with the at-fault party.

S.C.Code Ann. § 38–77–160 (2006).

Defendant asserts that since Plaintiff never brought an action against Washington, there is no "action establishing liability" as required by statute. (Mot. to Dismiss at 3–4.) Defendant also asserts that it was never given an opportunity to "defend in the name of the underinsured motorist in any action which may affect its liability" as provided for in the statute. *Id.* Consequently, Defendant asserts that all of Plaintiff's claims were brought prematurely, and should be dismissed.

### I. Plaintiff's Contract Claims

Two of Plaintiff's causes of action alleged in the Complaint, breach of contract and breach of contract accompanied by a fraudulent act, sound in contract.

■ "Recovery under the uninsured endorsement is subject to the condition that the insured establish legal liability on the part of the uninsured motorist." *Lawson v. Porter,* 256 S.C. 65, 68, 180 S.E.2d 643, 644 (1971). The statute is also clear on this point, saying that "[n]o action may be brought under the underinsured motorist provision unless copies of the pleadings in the action *establishing liability* are served in the manner provided by law upon the insurer writing the underinsured motorist provision." S.C.Code Ann. § 38–77–160 (2006) (emphasis added).

■ It is clear that the law governing insurance contracts like the one in question safeguards the insurer's right to defend its interests in any action establishing liability. To this end, which party is at-fault must be established in a court of law before insurers are contractually required to disburse UIM benefits. This is a prerequisite to the insurer's performance of the insurance contract provision in ques-

tion. Since Plaintiff has not yet established that Washington was the at-fault driver in the state court proceeding, Defendant cannot have breached its contract with Plaintiff by refusing to disburse UIM benefits.

Accordingly, Plaintiff's two contract causes of action are dismissed.

## II. Plaintiff's Tort Claims

 However, the law is less clear regarding Plaintiff's tort claims. Plaintiff has alleged that Defendant acted in bad faith in refusing to pay UIM benefits. "[I]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." *Nichols v. State Farm Mut. Auto. Ins. Co.,* 279 S.C. 336, 340, 306 S.E.2d 616, 619 (1983). Furthermore, a bad faith claim may exist even in the absence of any violation of an insurance contract provision, as "the benefits due an insured are not limited solely by those expressly set out in the contract." *Tadlock Painting Co. v. Maryland Cas. Co.,* 322 S.C. 498, 503, 473 S.E.2d 52, 55 (1996).

There are two cases of particular relevance to the present action. The first case, *Williams v. Selective Insurance Co. of the Southeast,* involved virtually identical facts to the present matter. 315 S.C. 532, 446 S.E.2d 402 (1994). That case involved a motorist, Williams, involved in a collision in which she was not at fault. The at-fault motorist was underinsured. Williams settled her claim with the at-fault motorist, and then sought to claim UIM benefits from her insurance carrier, Selective. When Selective refused to pay these bene-fits, Williams sued, alleging both breach of contract and bad faith refusal to pay UIM benefits. Selective moved to dismiss, claiming that Williams had not satisfied the requirements of § 38–77–160. The trial court dismissed the case, and the case was appealed.

The South Carolina Supreme Court upheld the trial court's dismissal of the case, reasoning:

> We note that the intent of § 38–77–160 is to protect an insurance carrier's right to contest its liability for underinsured benefits. An insured must therefore preserve the right of action against an at-fault driver so long as the underinsured carrier has not agreed to the amount and payment of underinsured motorist benefits. In the event the insured chooses to settle with the at-fault party's liability carrier, the underinsured carrier has the option to assume control of the defense of the action as provided in § 38–77–160. In this case, Williams's failure to pursue an action against the at-fault driver resulted in a total waiver of Insurer's right to defend. The purpose of § 38–77–160 is to avoid such a result.

*Id.* at 534–35, 446 S.E.2d at 404. However, one crucial distinction between Williams and the present case is that in Williams, the plaintiff never filed an action against the underinsured at-fault motorist, and by the time the court issued its decision, the applicable statute of limitations for such an action had run, making it impossible for the plaintiff to ever institute an action against the at-fault motorist. The court made note of this fact multiple times in its brief opinion.[1]

---

1. *See id.* at 533–34, 403 ("Further, since the statute of limitations to commence an action against the at-fault driver had expired, no such action could ever be brought and Insurer was entitled to judgment as a matter of law."); *id.* at 534, 404 ("Further, an action against the at-fault driver can never be brought since the statute of limitations has run on that cause of action.").

The other relevant case, *Myers v. State Farm Mutual Automobile Insurance Co.,* also involved very similar factual circumstances. 950 F.Supp. 148 (D.S.C.1997). In that case, all of plaintiff's claims had been settled except for her claim against the defendant for bad faith in refusing to pay UIM benefits. The key factual distinction between the *Myers* and the *Williams* cases was that Myers had filed suit against the allegedly at-fault driver and served documents pertaining to that action upon the defendant before demanding payment of her UIM benefits. *Id.* at 149. After State Farm refused to pay UIM benefits, Myers filed suit against the insurance company for bad faith.

State Farm asserted that *Williams* mandated dismissal of Myers' claim, since she had not obtained a judgment "establishing liability" against the at-fault driver. However, the *Myers* court explicitly held that *Williams* "did not hold that an insured can only bring a claim against his insurance carrier for bad faith refusal to pay underinsured benefits until a judgment is obtained against the at-fault driver in the underlying tort action." *Id.* at 150. The court characterized the holding of *Williams* as:

> merely requir[ing] that the insured bring suit against the at-fault driver and serve the suit papers on the insured's underinsured carrier before any suit can be brought by the insured against this carrier; *Williams* does not address the issue of *when* the insured may bring a suit against his own carrier for bad faith after bringing suit against the tortfeasor as aforesaid.

*Id.* Since Myers had initiated her action against the at-fault driver and served all relevant documents from that action upon State Farm before initiating her action against State Farm, the court ruled that *Williams* did not mandate the dismissal of her bad faith claim.

The court concluded that the insurer's duty of good faith arose, at the latest, "after the insured brings suit against the at-fault driver and serves the carrier with process." *Id.* The court also acknowledged that "[i]t could well be argued that the carrier's duty to act in good faith and deal fairly with the insured arises at the moment the underinsured policy is purchased . . ." *Id.* at n. 1. However, this issue of the precise chronological genesis of an insurer's good faith duty to pay or settle UIM benefits in the absence of a legal determination of fault on the other party was an issue that the court declined to conclusively decide, writing "[b]ecause of the facts in this case, this Court does not need to, and does not, decide whether the insurer's duty to act in good faith arises at the moment the underinsured policy is written." *Id.* Since State Farm's duty of good faith definitely existed at the point at which State Farm was served with the relevant documents from Myers' state court action against the allegedly at-fault driver, if not earlier, the court did not dismiss Myers' bad faith claim.

■ The present matter before the court falls somewhere in between *Williams* and *Myers.* Unlike Williams, Plaintiff may still establish in the state court action against Washington that Washington was at-fault. However, unlike Myers, Plaintiff did not institute an action against Washington and serve all relevant documents in such an action upon Defendant until after the present action had already been initiated. At the time this suit was filed, then, Defendant had no knowledge that Plaintiff was suing Washington–Defendant did not discover this until August 27, 20 days after the suit had been instituted.

In his Return to the Motion to Dismiss, Plaintiff relies heavily upon the *Myers* decision to support his claim that "[a]t the

very least, ... the duty of good faith arises when the Plaintiff brings an action against the at-fault party and the carrier is served with process. This duty can be breached well before any judgment being rendered in the underlying tort action." (Pl.'s Return at 5.) Since he has instituted a tort action against Washington for the purpose of establishing liability and properly served all relevant documents from that action upon Defendant, he claims that *Myers* mandates that his case against Defendant not be dismissed.

For its part, the Defendant asserts that *Myers* was wrongly decided, insofar as it completely ignored the "establishing liability" language of § 38–77–160. (Def.'s Reply at 4.) Defendant argues that "[t]o accept Plaintiff's contention would emasculate § 38–77–160 and the South Carolina Supreme Court's holding in *Williams*. An insurance carrier has the right to contest its liability for paying its insured UMI benefits." *Id.* at 4–5.

However, as Defendant acknowledges, the court need not go so far in order to dismiss Plaintiff's actions. *Id.* at 3. *Myers* explicitly said that *"Williams* merely requires that the insured bring suit against the at-fault driver and serve the suit papers on the insured's underinsured carrier *before* any suit can be brought by the insured against this carrier." *Myers*, 950 F.Supp. at 150 (emphasis added). The court's rationale was that § 38–77–160 explicitly gives insurers the right to defend their interests, and if there is a doubt about who is at-fault, they must be given an opportunity to contest this issue. *Williams*, 315 S.C. at 535, 446 S.E.2d at 404 ("In the event the insured chooses to settle with the at-fault party's liability carrier, the underinsured carrier has the option to assume control of the defense of the action as provided in § 38–77–160.").

These situations between UIM insurance providers and the insureds involve an inherent tension. On the one hand, the insurer is providing a service and owes a duty of good faith to the insured, who has paid premiums for this sort of coverage. However, the law must also be set up to safeguard against situations where the insured could perpetuate a fraud as to which motorist is at fault simply to collect their UIM benefits. For this reason, the insurer must have the ability, if it has questions about whether it was the third-party motorist or the insured who was actually at fault, to meaningfully contest the issue of liability in a court of law. So the insurer can be put in the unenviable position of being both an adversary and a service provider to the insured.

But the law must also protect the interests of the insured against insurers who invoke their rights as a hollow, technical means of avoiding paying the insured what is owed them. The court cannot and will not ignore the harsh reality of many of these cases, which is that the insured often suffers substantial health and property damage, only to discover that the UIM benefits which they had been paying premiums for precisely to come to their aid in just such an occasion were not being made available to them.

Establishing a balance between these competing interests is certainly no easy task. The court refuses to accept Defendant's assertion that insurance companies may be adversarial and owe their customers no duty whatsoever until the issue of liability is conclusively established in a separate tort action, which could take months or even years. There is simply no good reason why insurance companies should not be required to treat customers who have been paying premiums for years with at least a modicum of respect and dignity, instead of automatically doubting them in an attempt to avoid paying them benefits. For this reason, the court declines the Defendant's invitation to over-

turn or cast doubt upon the holding of *Myers*, which recognized a duty of good faith and fair dealing between insurer and insured beyond the requirements embodied within the four corners of the insurance contract document itself.

However, the court certainly does not expect insurance companies to open their coffers for every customer claiming they are entitled to UIM benefits. To do so would be unfair not only to the insurers but also to all insurance customers, to whom the costs of such an action would inevitably be passed along in the form of higher premiums. Just as the insurer owes a duty to the insured, the insured owes certain duties to the insurer as well. The requirement that it be legally established that the third-party motorist was actually at fault is a fair, meaningful check against potential fraud and deception on the part of the insured. At the very least, the insured owes the insurer a duty to diligently pursue an action to conclusively show that the third-party motorist was, in fact, the at-fault party. At that point, the insurer knows that the insured is taking action to establish that he or she was not at fault for the accident, and if the insurer has information that the insured may have been at fault and wishes to contest the issue, it still has a meaningful opportunity to do so. However, if the insured has made no indication that he or she intends to pursue any action to show that the third-party motorist was the party at fault,

it would not be fair to require the insurers to simply take the insured at his or her word. For this reason, the court declines to expand the insurer's duty of good faith as far as the *Myers* court speculated that it might be expanded.

■■■ The court declines to take the extreme measure of either overruling or expansively interpreting *Myers*, and instead takes the middle path of simply applying the holding of that case to the present matter. *Myers* held that *"Williams* merely requires that the insured bring suit against the at-fault driver and serve the suit papers on the insured's underinsured carrier *before* any suit can be brought by the insured against this carrier ..." *Myers*, 950 F.Supp. at 150 (emphasis added). *Myers* further held that "the carrier's duty to act in good faith regarding underinsured benefits arises *after* the insured brings suit against the at-fault driver and serves the carrier with process." *Id.* (emphasis added). The facts of the present case indicate that Plaintiff sued Defendant on August 7, but did not serve Defendant with proper documentation of his suit against Washington until August 27. At the time Plaintiff filed the Complaint in the present matter, then, Defendant's duty of good faith to Plaintiff regarding the payment of UIM benefits had not arisen, and thus could not have been violated. For this reason, Plaintiff's tort causes of action must be dismissed as premature.[2] Accordingly, Plaintiff's claims

---

**2.** While it is true that Plaintiff has also alleged that Defendant committed the torts of outrage and improper claims practices, the court finds that the merits of these claims are inherently dependent upon the merits of a bad faith claim. Outrage, also known as intentional infliction of emotional distress, cannot be shown in the absence of wrongful conduct. The South Carolina Supreme Court has held that in order to show outrage, the plaintiff must show that "the conduct was so 'extreme and outrageous' so as to exceed 'all possible bounds of decency' and must be regarded as

'atrocious, and utterly intolerable in a civilized community ...' " *Hansson v. Scalise Builders of South Carolina*, 374 S.C. 352, 356, 650 S.E.2d 68, 70 (2007) (quoting *Restatement (Second) of Torts* § 46, cmts. d, i, and j). Since the court has ruled that Defendant was acting within its rights, the Plaintiff has also plainly failed to show outrage. Similarly, in order to show improper claims practices, the South Carolina Supreme Court has written that the plaintiff must show that the insurer was "not attempting in good faith to effect prompt, fair, and equitable settlement of

for bad faith, outrage, and improper claims practices are dismissed.[3]

### CONCLUSION

For the foregoing reasons, the court finds that Plaintiff has not established an issue of material fact as to whether Defendant breached either its contract or its duty of good faith towards Plaintiff. It is therefore **ORDERED** that Defendant's Motion to Dismiss is **GRANTED**.

**AND IT IS SO ORDERED.**

claims." *Kleckley v. Northwestern Nat. Cas. Co.*, 338 S.C. 131, 137, 526 S.E.2d 218, 221 (2000). Since Plaintiff has not established an issue of material fact as to Defendant's violation of its duty of good faith, this claim also fails as a matter of law.

**3.** However, the court also emphasizes to both parties that the case is being dismissed without prejudice on the grounds of prematurity. If, after dismissal, Defendant continues to refuse to make any attempt to pay or settle Plaintiff's UIM benefit claims, absent any legitimate doubts regarding whether Plaintiff was actually at fault or lack of meaningful ability to contest such an issue, the Plaintiff at that time may have a claim for bad faith against Defendant that would possibly survive a motion to dismiss under *Myers*.